# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

CHARLES LONEWOLF,

    Defendant.

Case No. 3:23-cr-00111-SLG-KFR

**REPORT AND RECOMMENDATION TO DENY MOTION TO DISMISS**

    Before the Court is a Motion to Dismiss Indictment ("Motion") filed by Defendant Charles Lonewolf, requesting dismissal of his Indictment on Second Amendment grounds.[1] The government opposes the Motion.[2] Oral argument was not requested and was not necessary for the Court's recommendation. Because the Court is bound by Ninth Circuit precedent holding that the statute under which Defendant has been charged is constitutional, the Court recommends that the Motion be **DENIED.**

    **I.    BACKGROUND**

    On November 15, 2023, a grand jury returned an indictment charging Defendant with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[3] The Indictment alleges that on or about August 25, 2023, Defendant possessed a semiautomatic pistol despite knowing that he had been convicted of multiple crimes "punishable by imprisonment for terms exceeding one year."[4] The Indictment alleges that Defendant has three prior felony convictions: (1) a 2001 Oregon conviction for Sodomy in the First Degree, (2) a 2001 Oregon conviction for Sexual Abuse in the First Degree, and (3) a 2016 federal conviction for Failure to Register.[5]

---

[1] Docket 32.
[2] Docket 58.
[3] Docket 2.
[4] *Id.* at 1.
[5] *Id.* at 2.

On July 15, 2024, Defendant filed the Motion, arguing that the count alleged against him should be dismissed because § 922(g)(1) is unconstitutional as applied to him.[6] Relying primarily on a decision by a three-judge panel of the Ninth Circuit in *United States v. Duarte*,[7] Defendant maintains that § 922(g)(1) is unconstitutional applied to persons convicted of "non-violent" offenses.[8] Defendant asserts that he is such a person, reasoning that each of his felony convictions was for a non-violent offense because the "use of force or threat of force against another" was not an element of any of those offenses.[9]

In response, the government urges the Court to deny the Motion because shortly after Defendant filed the Motion, the Ninth Circuit vacated the panel's decision in *Duarte* and granted rehearing *en banc*.[10] Since the *Duarte* panel decision no longer controls, the government contends that the Court must follow pre-*Duarte* Ninth Circuit precedent upholding the constitutionality of § 922(g)(1) as a blanket matter.[11] The government argues that this precedent remains binding even in the wake of the U.S. Supreme Court's recent Second Amendment decisions in *New York State Rifle & Pistol Association, Inc. v. Bruen*[12] and *United States v. Rahimi*.[13]

## II. LEGAL STANDARD

A party may bring a pretrial motion to raise "any defense, objection, or request . . . that the court can determine without a trial on the merits."[14] Pursuant to this rule, a defendant may move to dismiss a "defective" indictment.[15] Dismissal is proper when an indictment is "sought under a statute that is unconstitutional on its face or as applied."[16]

---

[6] Docket 32 at 1.
[7] 101 F.4th 657 (9th Cir. 2024), *vacated*, 108 F.4th 786 (9th Cir. 2024).
[8] Docket 32 at 10–13.
[9] *Id.*
[10] Docket 58 at 1. The government submits that the Court could alternatively hold the Motion in abeyance pending resolution of the *en banc* proceedings in *Duarte*. *Id.* at 2. Defendant has not asked the Court to take this approach following the change in circumstances since he filed the Motion.
[11] *Id.* at 1–2.
[12] 597 U.S. 1 (2022).
[13] Docket 58 at 4–11; 602 U.S. —, 144 S. Ct. 1889 (2024).
[14] Fed. R. Crim. P. 12(b)(1).
[15] *See United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007).
[16] *Id.*

## III. DISCUSSION

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."[17] The first U.S. Supreme Court case to undertake an "in-depth examination of the Second Amendment" was *District of Columbia v. Heller*.[18] In *Heller*, the Supreme Court concluded that a District of Columbia regulation banning handgun possession in the home violated the Second Amendment, explaining that the right to keep and bear arms is an individual right held by the people without regard to any militia service.[19] In so holding, the Supreme Court clarified that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."[20] The Supreme Court further emphasized that these prohibitions were "presumptively lawful."[21] Two years later, in *McDonald v. City of Chicago*, the Supreme Court "repeat[ed] [its] assurances" that *Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons."[22]

In *United States v. Vongxay*, the Ninth Circuit relied on *Heller* and *McDonald* in ruling that § 922(g)(1) did not violate the Second Amendment as applied to the defendant, a convicted felon.[23] The court observed that *Heller* categorized longstanding prohibitions on the possession of firearms by felons as "presumptively lawful regulatory measures,"[24] and declared that "[n]othing in *Heller* can be read legitimately to cast doubt on the constitutionality of § 922(g)(1)."[25] Moreover, the court squarely rejected the defendant's argument that *Heller*'s language about firearm-possession bans for convicted felons was non-binding dicta, explaining that this language was "integral" to *Heller* in limiting that decision's scope.[26] In several subsequent decisions, the Ninth Circuit continued to affirm the validity

---

[17] U.S. Const. amend. II.
[18] 554 U.S. 570, 635 (2008).
[19] *Id.*
[20] *Id.* at 626.
[21] *Id.* at 626 n.26.
[22] 561 U.S. 742, 786 (2010).
[23] 594 F.3d 1111, 1118 (9th Cir. 2010).
[24] *Id.* at 1115 (emphasis omitted) (quoting *Heller*, 554 U.S. at 626 n.26).
[25] *Id.* at 1114.
[26] *Id.* at 1115.

of § 922(g)(1) on similar grounds.[27]

In May 2024, the three-judge panel in *Duarte* held that *Vongxay* had been effectively overruled by *Bruen* and thus no longer controlled the issue of § 922(g)(1)'s constitutionality.[28] The panel determined that the reasoning of *Vongxay* was "clearly irreconcilable" with *Bruen* because the *Vongxay* court did not apply the "textually and historically focused 'mode of analysis'" set forth for the first time in *Bruen*.[29] The panel then engaged in the *Bruen* analysis and concluded that § 922(g)(1) was unconstitutional as applied to the defendant, who had five prior "non-violent" state felony convictions.[30] But in August 2024, the panel's decision in *Duarte* was vacated and rehearing *en banc* granted.[31] Thus, the panel's decision no longer has precedential value.[32]

As a general rule, this Court is bound by Ninth Circuit precedent.[33] An exception exists where an "intervening higher authority" has "undercut the theory or reasoning underlying [a] prior circuit precedent in such a way that the cases are clearly irreconcilable."[34] In such cases, the court "should consider [itself] bound" by the intervening authority and the prior precedent "effectively overruled."[35] "The clearly irreconcilable requirement is a high standard. . . . [I]t is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent."[36] Rather, if a court "can apply . . . prior

---

[27] *Van Der Hule v. Holder*, 759 F.3d 1043, 1051 (9th Cir. 2014) ("We addressed whether § 922(g)(1) violates the Second Amendment in [*Vongxay*] and determined that it did not. . . . We see no reason to change our view now."); *United States v. Phillips*, 827 F.3d 1171, 1175 (9th Cir. 2016) (stating that the court was required to "assum[e] the propriety of felon firearm bans . . . under Supreme Court precedent and [its] own"); *United States v. Torres*, 789 Fed. App'x 655, 657 (9th Cir. 2020) (noting that the court was still "bound under *Vongxay* and *Heller* to assume propriety of felon firearm bans").
[28] 101 F.4th at 661.
[29] *Id.* at 665 (quoting *Miller v. Gammie*, 335 F.3d 889, 893, 900 (9th Cir. 2003) (en banc)).
[30] *Id.* at 661–62.
[31] 108 F.4th at 786.
[32] *See Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1036 (9th Cir. 2012) (holding that conclusion of vacated panel decision had no precedential value where *en banc* court did not adopt same conclusion).
[33] *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).
[34] *Miller*, 335 F.3d at 900.
[35] *Id.*
[36] *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018) (quoting *United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017)); *see also In re Gilman*, 887 F.3d 956, 962 (9th Cir. 2018) (requiring intervening authority to be "fundamentally inconsistent" with prior precedent).

circuit precedent without running afoul of the intervening authority it must do so."[37]

Here, the Court agrees with the government that *Vongxay* remains good law. Defendant has not shown that *Vongxay*'s recognition of § 922(g)(1)'s constitutionality is clearly irreconcilable with *Bruen* or any other Supreme Court precedent. "*Bruen* created a new standard to evaluate whether modern firearms regulations comport with the Second Amendment, [but] . . . did not question the constitutionality of regulations disarming felons."[38] To the contrary, the majority opinion in *Bruen* "recognized the continuing validity" of these "longstanding" laws and emphasized that its holding was "in keeping with *Heller*."[39] Several of the separate opinions similarly recognized *Bruen*'s consistency with *Heller* and *McDonald*. In a concurrence, Justice Kavanaugh—joined by Chief Justice Roberts—approvingly quoted *McDonald* to reiterate that the Supreme Court's Second Amendment jurisprudence should not be interpreted to "cast doubt on [the] longstanding prohibitions on the possession of firearms by felons."[40] Justice Breyer—joined by Justices Kagan and Sotomayor in dissent—agreed with Justice Kavanaugh in "understand[ing] [*Bruen*] . . . to cast no doubt on [this] aspect of *Heller*'s holding."[41] Justice Alito likewise indicated in his concurrence that *Bruen* had not "disturbed anything that [the Supreme Court] said in *Heller* or *McDonald* . . . about restrictions that may be imposed on the possession or carrying of guns."[42]

*Rahimi* offers no indication otherwise. In *Rahimi*, the Supreme Court rejected the petitioner's Second Amendment challenge to a different statute that prohibits the possession of firearms by those subject to a domestic violence restraining order.[43] In its decision, the Supreme Court once again reaffirmed its pronouncement in *Heller* that prohibitions on firearm possession by felons are presumptively lawful.[44] And while the Supreme Court provided some guidance on how to evaluate a

---

[37] *Close*, 984 F.3d at 1073.
[38] *United States v. Endsley*, No. 3:21-cr-00058-TMB-MMS-1, 2023 WL 6476389, at *3 (D. Alaska Oct. 5, 2023).
[39] *Roberts*, 2024 WL 50889, at *5 (quoting *Bruen*, 597 U.S. at 17).
[40] *Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring).
[41] *Id.* at 129 (Breyer, J., dissenting).
[42] *Id.* at 72 (Alito, J., concurring).
[43] 144 S. Ct. at 1895–96, 1898; *see also* 18 U.S.C. § 922(g)(8).
[44] *See* 144 S. Ct. at 1902.

challenged firearms regulation,[45] it did not address the issues Defendant raises here, such as whether only "non-violent" felonies may serve as predicates to a § 922(g)(1) charge or whether individuals convicted of such crimes may be prohibited from possessing firearms for the rest of their lives.

Considerable evidence thus supports the notion that *Bruen* preserved *Heller* and *McDonald*'s endorsements of the validity of felon disarmament laws.[46] Accordingly, the Court concludes that *Vongxay*'s reliance on these statements does not render that case incompatible with *Bruen*.

Furthermore, to the extent that *Vongxay* does not follow the precise analysis articulated in *Bruen*, this inconsistency does not demonstrate that the two cases are clearly irreconcilable. In setting forth a new standard for evaluating Second Amendment challenges, *Bruen* rejected the widely accepted two-step framework the Courts of Appeals had previously used. At the first step, the government had an opportunity to establish the challenged law regulates activity falling outside the scope of the right as originally understood.[47] Courts then ascertained the original scope of the right based on its historical meaning.[48] If the government could prove the regulated conduct fell beyond the Second Amendment's original scope, the analysis stopped there because the regulated activity was "categorically unprotected."[49] But if the historical evidence was inconclusive or "suggest[ed] the regulated activity was not categorically unprotected," the analysis proceeded to step two.[50] At the second step, courts analyzed "how close the law c[ame] to the core of the Second Amendment right and the severity of the law's burden on that right."[51] If a "core" Second Amendment right was burdened, courts applied strict scrutiny to determine whether the law was "narrowly tailored to achieve a compelling

---

[45] *Id.* at 1897–98.

[46] The Court further notes that although the three-judge panel in *Duarte* put little stock in *Heller*'s language about the presumptive lawfulness of felon disarmament laws, another three-judge panel of the Ninth Circuit relied on the same language in holding that *Bruen* does not preclude the temporary pretrial disarmament of a defendant charged with a "serious" felony. *See United States v. Perez-Garcia*, 96 F.4th 1166, 1186 (9th Cir. 2024). The latter panel's reasoning lends additional support to the conclusion that *Vongxay* is not clearly irreconcilable with *Bruen*.

[47] *Bruen*, 597 U.S. at 18 (citing *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019)).

[48] *Id.* (citing *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017)).

[49] *Id.* (internal quotation marks omitted) (quoting *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012)).

[50] *Id.* (internal quotation marks omitted) (quoting *Kanter*, 919 F.3d at 441).

[51] *Id.* (internal quotation marks omitted) (quoting *Kanter*, 919 F.3d at 441).

R&R re Motion to Dismiss
*United States v. Lonewolf*
3:23-cr-00111-SLG-KFR
6
Case 3:23-cr-00111-VMK-KFR   Document 70   Filed 09/23/24   Page 6 of 9

governmental interest."[52] Otherwise, courts applied intermediate scrutiny and considered whether the regulation was "substantially related to the achievement of an important governmental interest."[53]

*Bruen* rejected the second half of this approach, which it deemed "one step too many" because *Heller* and *McDonald* did not support applying means-end scrutiny in a Second Amendment context.[54] *Bruen* set forth a new standard, under which a court must first determine whether "the Second Amendment's plain text covers an individual's conduct."[55] If it does not, then the regulation is valid and the analysis ends there. But if the Second Amendment's text covers the conduct at issue, then the conduct is "presumptively protect[ed]," and the court must then determine whether the government has met its burden to "justify its regulation by demonstrating that it is consistent with this Nation's historical tradition of firearm regulation."[56] "Only if a firearm regulation is consistent with this Nation's historical traditional may a court conclude that the individual's conduct falls outside the Second Amendment's [protection]."[57]

*Vongxay* did not apply the means-end scrutiny that *Bruen* now forbids. Rather, in addition to relying on *Heller*, the *Vongxay* court considered the text and historical understanding of the Second Amendment. The court observed that "denying felons the right to bear arms is consistent with the explicit purpose of the Second Amendment" and noted that it had identified analogous "historical gun restrictions" that supported § 922(g)(1)'s constitutionality.[58] Although *Vongxay* did not fully engage in the core historical analysis that *Bruen* now requires and acknowledged that "the historical question ha[d] not been definitively resolved,"[59] "that limited tension between *Vongxay* and *Bruen* is not enough to

---

[52] *Id.* at 18–19 (internal quotation marks omitted) (quoting *Kolbe v. Hogan*, 849 F.3d 114, 133 (4th Cir. 2017)).
[53] *Id.* at 19 (quoting *Kachalsky v. County of Westchester*, 701 F.3d 81, 96 (2d Cir. 2012)).
[54] *Id.*
[55] *Id.* at 24.
[56] *Id.*
[57] *Id.*
[58] *Vongxay*, 594 F.3d at 1116–17; *see also id.* at 1118 ("[M]ost scholars of the Second Amendment agree that the right to bear arms was 'inextricably . . . tied to' the concept of a 'virtuous citizen[ry]' that would protect society through 'defensive use of arms against criminals, oppressive officials, and foreign enemies alike,' and that 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals).'" (quoting Don. B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 LAW & CONTEMP. PROBS. 143, 146 (1986))).
[59] *Id.* at 1118.

find that *Bruen* effectively overruled *Vongxay*."[60]

In sum, the Court remains bound by *Vongxay* because it is possible to apply that case's reasoning consistently with *Bruen*. *Bruen* did not overturn *Vongxay*'s holding that § 922(g)(1) does not violate the Second Amendment. This conclusion is consistent with the decisions of other district courts within the Ninth Circuit, including courts that have addressed the issue since *Rahimi* and since the grant of rehearing *en banc* in *Duarte*.[61]

### IV. CONCLUSION

The Court concludes that § 922(g)(1) is constitutional as applied to Defendant. Therefore, the Court recommends that Defendant's Motion to Dismiss at Docket 32 be **DENIED** without prejudice to refiling if it becomes appropriate after the *en banc* decision in *Duarte*.

---

[60] *United States v. Jackson*, 656 F. Supp. 3d 1239, 1243 (W.D. Wash. 2023) (internal quotation marks omitted); *see also Vincent v. Garland*, 80 F.4th 1197, 1199–1202 (10th Cir. 2023) (determining that *Bruen* did not abrogate circuit precedent that relied on *Heller*'s language about "longstanding" felon-in-possession restrictions to uphold § 922(g)(1), explaining that *Bruen* "did not indisputably and pellucidly abrogate" that precedent); *United States v. Jackson*, 69 F.3th 495, 502, 505 n.3 (8th Cir. 2023) (concluding that § 922(g)(1) is constitutional based on historical tradition of legislatures "employ[ing] status-based restrictions to disqualify categories of persons from possessing firearms," and opining that in *Heller*, the Supreme Court "presumed that . . . regulations [forbidding the possession of firearms by felons] are constitutional because they are constitutional," though the Supreme Court "termed the conclusion presumptive because the specific regulations were not at issue in *Heller*"); *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024) (describing argument that § 922(g)(1) violates Second Amendment as "hard to square with" Supreme Court's repeated pronouncements that longstanding prohibitions on the possession of firearms by felons are presumptively valid); *United States v. Jones*, 88 F.4th 571, 574 (5th Cir. 2023) (rejecting argument that district court committed plain error by determining § 922(g)(1) is constitutional and compiling intra-circuit cases holding the same).

[61] *See, e.g.*, *United States v. Jessup*, No. CR-23-00223-001-PHX-DWL, 2024 WL 4108007 (D. Ariz. Sept. 6, 2024); *United States v. Russell*, No. 2:23-cr-00142-TL, 2024 WL 4107312 (Sept. 6, 2024); *United States v. Cardiel*, No. 1:22-cr-00041 NODJ BAM, 2024 WL 3984002 (E.D. Cal. Aug. 29, 2024); *United States v. Coleman*, No. CR-23-02363-001-TUC-RCC (MSA), 2024 WL 3890710 (D. Ariz. July 29, 2024); *United States v. Tullis*, No. 2:22-cr-00140-GMN-MDC, 2024 WL 3540401 (D. Nev. July 23, 2024); *United States v. Delpriore*, 634 F. Supp. 3d 654 (D. Alaska 2022); *United States v. Roberts*, — F.3d —, No. 3:23-cr-00057-TMB-KFR-1, 2024 WL 50889 (D. Alaska 2024); *United States v. Owens*, No. 3:23-cr-00026-SLG-KFR, 2023 WL 5291341 (D. Alaska Aug. 17, 2023); *United States v. Jackson*, 656 F. Supp. 3d 1239 (W.D. Wash. 2023); *United States v. Serrano*, 651 F. Supp. 3d 1192 (S.D. Cal. 2023); *United States v. Hunt*, 697 F. Supp. 3d 1074 (D. Or. 2023); *United States v. Gamble*, 697 F. Supp. 3d 1045 (D. Nev. 2023); *United States v. Hill*, 629 F. Supp. 3d 1027 (C.D. Cal. 2022); *United States v. Butts*, 637 F. Supp. 3d 1134 (D. Mont. 2022); *United States v. Yates*, No. 23-cr-0031-AMO-1, 2024 WL 69072 (N.D. Cal. Jan. 5, 2024); *United States v. Estrada*, No. 1:22-cr-00256-BLW, 2023 WL 4181325 (D. Idaho June 26, 2023); *United States v. Guthery*, No. 2:22-cr-00173-KJM, 2023 WL 2696824 (E.D. Cal. Mar. 29, 2023); *United States v. Chatman*, Nos. 22-cr-00453-CRB-1 & 14-cr-00552-CRB-1, 2023 WL 3509699 (N.D. Cal. May 16, 2023).

DATED this 23rd day of September, 2024, at Anchorage, Alaska.

/s/ Kyle F. Reardon
KYLE F. REARDON
United States Magistrate Judge
District of Alaska

**NOTICE OF RIGHT TO OBJECT**

Under 28 U.S.C. § 636(b)(1), a district court may designate a magistrate judge to hear and determine matters pending before the Court. For dispositive matters, a magistrate judge reports findings of fact and provides recommendations to the presiding district court judge.[62] A district court judge may accept, reject, or modify, in whole or in part, the magistrate judge's findings and recommendations.[63]

A party may file written objections to the magistrate judge's findings and recommendations within fourteen (14) days.[64] A response to the objections may be filed within seven (7) days after any objection is filed.[65] Objections and responses are limited to five (5) pages in length and should not merely reargue positions previously presented. Rather, objections and responses should specifically identify the findings or recommendations objected to, the basis of the objection, and any legal authority in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the district court's judgment.[66]

---

[62] 28 U.S.C. § 636(b)(1)(B).
[63] *Id.* § 636(b)(1)(C).
[64] *Id.*; L.M.J.R. 7(a)(1).
[65] L.M.J. R. 7(a)(2).
[66] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).

R&R re Motion to Dismiss
*United States v. Lonewolf*
3:23-cr-00111-SLG-KFR 9
Case 3:23-cr-00111-VMK-KFR   Document 70   Filed 09/23/24   Page 9 of 9